IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
* * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA      *
                              *    Case No. 8:21-CR-192
vs.                           *
                              *    May 16, 2023
BROOKE SHAWNTAYE SPARKS       *
* * * * * * * * * * * * * * * *
```

<u>SENTENCING HEARING</u>

Heard in Courtroom 14B
Sam M. Gibbons United States Courthouse
801 N. Florida Avenue
Tampa, FL
May 16, 2023

<u>BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON</u>

<u>UNITED STATES DISTRICT JUDGE</u>

Official Court Reporter:     Tana J. Hess, CRR, FCRR, RMR
                             U.S. District Court Reporter
                             Middle District of Florida
                             Tampa Division
                             801 N. Florida Avenue
                             Tampa, FL  33602
                             813.301.5207
                             tana_hess@flmd.uscourts.gov

Proceedings recorded by mechanical stenography using
computer-aided transcription software.

APPEARANCES:


FOR THE GOVERNMENT:

        Erin Claire Favorit
        DOJ-USAO
        400 N. Tampa Ave.
        Suite 3200
        Tampa, FL  33602
        813.274.6259
        erin.favorit@usdoj.gov

FOR THE DEFENDANT:

        Sara Lenore Mieczkowski
        Federal Public Defender's Office
        400 N. Tampa Street
        Suite 2700
        Tampa, FL  33602
        813.228.2715
        sara_mieczkowski@fd.org

| | | |
|---|---|---|
| 3:03 PM | 1 | (Call to order of the Court.) |
| 3:03 PM | 2 | **THE COURT:**  We'll get started in just a moment. |
| 3:03 PM | 3 | (Pause.) |
| 3:03 PM | 4 | **THE COURT:**  All right.  Good afternoon.  We're here |
| 3:03 PM | 5 | for the sentencing in United States v. Brooke Shawntaye Sparks, |
| 3:04 PM | 6 | case 21-CR-192. |
| 3:04 PM | 7 | And I'll begin by having counsel state their |
| 3:04 PM | 8 | appearances.  Who do we have for the Government? |
| 3:04 PM | 9 | **MS. FAVORIT:**  Good afternoon, Your Honor.  Erin |
| 3:04 PM | 10 | Favorit on behalf of the United States, and I'm here at counsel |
| 3:04 PM | 11 | table with Sara Angela Santo, special agent from HSI. |
| 3:04 PM | 12 | **THE COURT:**  Thank you.  For the defense? |
| 3:04 PM | 13 | **MS. MIECZKOWSKI:**  Good afternoon, Your Honor.  Sara |
| 3:04 PM | 14 | Mieczkowski on behalf of Ms. Sparks, who is here also with me |
| 3:04 PM | 15 | at counsel table. |
| 3:04 PM | 16 | **THE COURT:**  Thank you, Ms. Mieczkowski.  Ms. Sparks |
| 3:04 PM | 17 | is there.  Ms. Campbell is here from probation.  Brooke |
| 3:04 PM | 18 | Shawntaye Sparks, on January 30th, 2023, you entered a plea of |
| 3:04 PM | 19 | guilty to Count 1 of the indictment charging you with |
| 3:04 PM | 20 | production and distribution of child pornography, in violation |
| 3:04 PM | 21 | of Title 18, United States Code, Sections 2251(a) and (e), and |
| 3:04 PM | 22 | Count 4 of the indictment charging you with possession of child |
| 3:04 PM | 23 | pornography, in violation of Title 18, United States Code, |
| 3:04 PM | 24 | Sections 2252(a)(4)(B) and (b)(2). |
| 3:05 PM | 25 | The Court previously accepted your guilty plea |

| | | |
|---|---|---|
| 3:05 PM | 1 | and has adjudged you guilty of those offenses. |
| 3:05 PM | 2 | We have now reached the stage in the proceedings |
| 3:05 PM | 3 | where it is my duty to address several questions to you and |
| 3:05 PM | 4 | your attorneys and counsel for the Government. |
| 3:05 PM | 5 | Ms. Favorit, have you had the opportunity read |
| 3:05 PM | 6 | the presentence report? |
| 3:05 PM | 7 | MS. FAVORIT:  I have, Your Honor. |
| 3:05 PM | 8 | THE COURT:  Do you have any objections as to the |
| 3:05 PM | 9 | factual accuracy of the report? |
| 3:05 PM | 10 | MS. FAVORIT:  I do not, Your Honor. |
| 3:05 PM | 11 | THE COURT:  Do you wish to make any objections to the |
| 3:05 PM | 12 | probation officer's application of the guidelines? |
| 3:05 PM | 13 | MS. FAVORIT:  I have no objections. |
| 3:05 PM | 14 | THE COURT:  All right.  Thank you.  Ms. Mieczkowski, |
| 3:05 PM | 15 | have you had the opportunity to read and discuss with |
| 3:05 PM | 16 | Ms. Sparks the presentence report? |
| 3:05 PM | 17 | MS. MIECZKOWSKI:  I have, Your Honor. |
| 3:05 PM | 18 | THE COURT:  Do you have any objections as to the |
| 3:05 PM | 19 | factual accuracy of the report? |
| 3:05 PM | 20 | MS. MIECZKOWSKI:  No, Your Honor. |
| 3:05 PM | 21 | THE COURT:  Do you wish to make any objections to the |
| 3:05 PM | 22 | probation officer's application of the guidelines? |
| 3:05 PM | 23 | MS. MIECZKOWSKI:  No, Your Honor. |
| 3:05 PM | 24 | THE COURT:  Thank you.  There being no objections to |
| 3:06 PM | 25 | the factual statements and guideline calculations contained in |

3:06PM  1   the presentence report, the Court adopts those statements as

3:06PM  2   its findings of fact and determines that the advisory

3:06PM  3   guidelines are total offense level 43, criminal history

3:06PM  4   category 1, 480 months imprisonment, 5 years to life as to

3:06PM  5   Counts 1 and 4 supervised release.  Restitution has not been

3:06PM  6   determined.  $50,000 to $250,000 fine, a $200 special

3:06PM  7   assessment, $5,000 per count JVTA assessment, up to $50,000

3:06PM  8   AVAA assessment.

3:06PM  9           Let me ask the Government, with respect to

3:06PM  10  restitution, is that something that you plan on presenting?

3:06PM  11  What's your position on that?

3:06PM  12          MS. FAVORIT:  Your Honor, after speaking with the

3:06PM  13  victims' guardians, they are not giving any statements today.

3:07PM  14  However, I believe it would be appropriate to ask for the

3:07PM  15  minimum of the $3,000, which would qualify for the production

3:07PM  16  of child pornography and distribution for child pornography

3:07PM  17  offenses.

3:07PM  18          THE COURT:  $3,000 in restitution?

3:07PM  19          MS. FAVORIT:  Yes, that's the minimum required if

3:07PM  20  requested.

3:07PM  21          THE COURT:  Are you requesting it?

3:07PM  22          MS. FAVORIT:  I am requesting that $3,000, Your

3:07PM  23  Honor.

3:07PM  24          THE COURT:  All right.  Is there any objection to

3:07PM  25  that, Ms. Mieczkowski?

| | | |
|---|---|---|
| 3:07PM | 1 | **MS. MIECZKOWSKI:**  Your Honor, I would ask for the |
| 3:07PM | 2 | opportunity to research that issue.  My understanding in the |
| 3:07PM | 3 | past was that it needed to be requested by the victim, and it |
| 3:07PM | 4 | wasn't the Government's position to make the request, but I |
| 3:07PM | 5 | could be mistaken about that, and certainly I would be able to |
| 3:07PM | 6 | confer in short order after today with the Government and |
| 3:07PM | 7 | double-check on that and file something in writing if that |
| 3:07PM | 8 | would satisfy the Court. |
| 3:07PM | 9 | **THE COURT:**  I'll tell you what.  Sometimes we just |
| 3:08PM | 10 | put off the issue of restitution.  I think we have up to 60 |
| 3:08PM | 11 | days post-sentencing to decide restitution.  So why don't I ask |
| 3:08PM | 12 | that two weeks from today you present like a joint memo to me |
| 3:08PM | 13 | or a position paper with respect to that.  So that will be due |
| 3:08PM | 14 | whatever two weeks -- today is the 16th, so the 30th, May 30th. |
| 3:08PM | 15 | Okay.  So I'm going to leave restitution open for the time |
| 3:08PM | 16 | being. |
| 3:08PM | 17 | Ms. Favorit, is there a victim or a victim |
| 3:08PM | 18 | representative in the courtroom? |
| 3:08PM | 19 | **MS. FAVORIT:**  There is not, Your Honor. |
| 3:08PM | 20 | **THE COURT:**  Okay.  Ms. Favorit, do you know of any |
| 3:08PM | 21 | reason why this Court should not now proceed with imposition of |
| 3:08PM | 22 | sentence? |
| 3:08PM | 23 | **MS. FAVORIT:**  I do not, Your Honor. |
| 3:08PM | 24 | **THE COURT:**  This is your opportunity to tell me what |
| 3:08PM | 25 | you think an appropriate sentence for Ms. Sparks would be. |

3:08PM 1          MS. FAVORIT:  Yes.  Would you like me to approach the
3:08PM 2    lectern?
3:08PM 3          THE COURT:  That would be fine.  Thank you.
3:08PM 4          MS. FAVORIT:  Your Honor, we were able to file a
3:09PM 5    sentencing memorandum.  Hopefully you received that.
3:09PM 6          THE COURT:  I have that right in front of me where
3:09PM 7    you ask for I think a guideline sentence.
3:09PM 8          MS. FAVORIT:  That's correct, Your Honor.  Of course,
3:09PM 9    because the maximum sentence would be 480 months, even though
3:09PM 10   she scores life, we're asking, of course, the maximum of 480
3:09PM 11   months.
3:09PM 12         THE COURT:  Well, on other cases, I have sentenced
3:09PM 13   people to life, pretty egregious cases.  I am really troubled
3:09PM 14   here.  We are two days after Mother's Day.  I'm hearing --
3:09PM 15   sadly hearing about what this mother did.  So it's probably the
3:09PM 16   first time I've had a case with a mother.  It's normally, like,
3:09PM 17   a mother's boyfriend or a stepfather.  I have had biological
3:09PM 18   parents do it, but I don't believe I've had a mother do this to
3:10PM 19   her child.  So it's certainly pretty troubling.
3:10PM 20         MS. FAVORIT:  Our request for the maximum sentence
3:10PM 21   allowed in this particular case really is based upon what
3:10PM 22   you're referring to.  The specific nature and circumstances of
3:10PM 23   this offense are particularly egregious.  When Ms. Sparks
3:10PM 24   didn't know anybody was watching, didn't know anybody would see
3:10PM 25   those text messages, created videos, sexually abused her own

3:10 PM 1  child, a 9-year-old child at the time; would, according to the

3:10 PM 2  child, give him melatonin so he would be sleepy while it

3:10 PM 3  happened and wouldn't always know what was going on.  It just

3:10 PM 4  kind of showed the intent behind the creation of the video.

3:10 PM 5  But I think not only is the sexual abuse egregious because, as

3:11 PM 6  you said, this was her own child, this child lives with her.

3:11 PM 7  This is the most trusted person, I imagine, in his whole world,

3:11 PM 8  and to be violated in that manner.

3:11 PM 9           But when she talks about that abuse or requests

3:11 PM 10  images from the man that she was talking to online, we kind of

3:11 PM 11  get a picture as to what was going on in Ms. Sparks' head when

3:11 PM 12  she is creating these videos.  It appeared it was some type of

3:11 PM 13  exchange between the man in Australia -- we'll refer to him as

3:11 PM 14  GM -- and Ms. Sparks.  There's some type of romantic

3:11 PM 15  relationship going on.  He has a young son, she has a young

3:11 PM 16  son, and they talk about these children as if, you know,

3:11 PM 17  they're their tools or playthings to create these images, share

3:11 PM 18  them, and then talk about them.  When Ms. Sparks -- as I put in

3:11 PM 19  the memo the particular conversation -- says things like,

3:12 PM 20  "Thank you so much for showing me his smooth little cock", and,

3:12 PM 21  you know, she's referring to a baby.

3:12 PM 22           **THE COURT:**  Uh-huh.

3:12 PM 23           **MS. FAVORIT:**  So the nature and circumstances of this

3:12 PM 24  offense we believe require that maximum sentence to show the

3:12 PM 25  gravity of harm that she caused, not only her own minor child,

3:12PM  1   but the harm that she caused the victims in the other child

3:12PM  2   sexual abuse material images that she was possessing.

3:12PM  3       THE COURT:  Let me ask you a couple of things.  I

3:12PM  4   mean, you -- according to the presentence report, this is

3:12PM  5   somebody who said she was abused by a family member herself.

3:12PM  6   This is somebody who has had significant mental health issues.

3:12PM  7   That doesn't excuse anything that occurred here, but maybe it

3:13PM  8   explains -- I don't know want to say why she did it, but it

3:13PM  9   explains some of the background that she had that maybe led her

3:13PM  10  in that direction.  I don't know.  How would you -- how would

3:13PM  11  you address the issues raised by the defense or in the

3:13PM  12  presentence report about her mental health issues, about her

3:13PM  13  own abuse as a child?

3:13PM  14      MS. FAVORIT:  Yes, Your Honor.  I cannot discount

3:13PM  15  that she may have been -- or was abused by someone when she was

3:13PM  16  a child, and of course she does have significant mental health

3:13PM  17  issues.  However, in my position, I think there's a lot of

3:13PM  18  people with major mental health issues, and there are a lot of

3:13PM  19  sexual abuse victims who do not commit this type of crime.

3:14PM  20  That is not something I think that falls into the category of

3:14PM  21  things that happen when you've been sexually abused by someone

3:14PM  22  as a child, that now you're going to be sexually abusing

3:14PM  23  somebody as an adult.  I don't think that there's a lot of

3:14PM  24  support for that.  So I understand why that may come into play

3:14PM  25  as a sentencing factor to be reviewed, and I think you're

3:14PM 1    correct; it should not be discounted, but not for the reasons

3:14PM 2    of explaining why this happened.

3:14PM 3         THE COURT:  Right.  I -- I personally know people who

3:14PM 4    have told me they've been abused as children by family members,

3:14PM 5    and I don't think they ever did anything even close to this.

3:14PM 6              So it's true.  Just because you've been abused

3:14PM 7    doesn't mean that you're going to do it.  I just have seen in

3:14PM 8    my experience here as a judge that a lot of people who do

3:15PM 9    this -- whether it's true or not, I don't know -- they say

3:15PM 10   they've been abused as children.  They say it.

3:15PM 11        MS. FAVORIT:  I have heard that quite a bit, Your

3:15PM 12   Honor, but I have -- I don't like to totally speak from my own

3:15PM 13   experience in this position, because of course this is about

3:15PM 14   Ms. Sparks, but I don't commonly get, you know, people that

3:15PM 15   I've had as victims that are now abusers in sexual abuse cases.

3:15PM 16   I haven't seen that often.  It's typically -- when I see

3:15PM 17   defendants on these charges who were sexually abused as

3:15PM 18   children, they're all typically unreported, and there are no

3:15PM 19   criminal cases attached to them, which I think is kind of a big

3:15PM 20   difference.

3:15PM 21        THE COURT:  One other thing, and this is the other

3:15PM 22   thing I grapple with when it's a significant sentence.  Here

3:15PM 23   it's 40 years.  So she's 30-something, so, you know, that's a

3:16PM 24   pretty -- you may call it a life sentence.  You may I call it

3:16PM 25   40 years, but it's a pretty significant period time.

| | | |
|---|---|---|
| 3:16 PM | 1 | And that is, you know, our system depends on |
| 3:16 PM | 2 | people pleading guilty.  That's how we are able to resolve |
| 3:16 PM | 3 | cases quickly through the system.  If we tried these cases, we |
| 3:16 PM | 4 | would be inundated the way some other countries are.  And so |
| 3:16 PM | 5 | that's really what the American justice system is built around. |
| 3:16 PM | 6 | It's on people pleading guilty when they've committed crimes |
| 3:16 PM | 7 | and getting a lower sentence.  And I've had defense attorneys |
| 3:16 PM | 8 | say this to me:  "You know, if you give my client a life |
| 3:16 PM | 9 | sentence or 40 years, what's the point?  We should have just |
| 3:16 PM | 10 | rolled the dice and gone to trial because on any given day |
| 3:16 PM | 11 | there is a jury that will do something that you don't |
| 3:17 PM | 12 | necessarily expect them to do." |
| 3:17 PM | 13 | So what's your response to that? |
| 3:17 PM | 14 | MS. FAVORIT:  I understand what you mean, Your Honor. |
| 3:17 PM | 15 | Of course as a prosecutor, I'm in the position where we do like |
| 3:17 PM | 16 | to give incentives as well for them to plead guilty, especially |
| 3:17 PM | 17 | if we can prevent a minor child from testifying in court.  I |
| 3:17 PM | 18 | think there are a few considerations in this particular case. |
| 3:17 PM | 19 | One, that the evidence of guilt was so strong.  The Defendant |
| 3:17 PM | 20 | is on video giving oral sex to her 9-year-old son.  So unless |
| 3:17 PM | 21 | something went terribly wrong with entering the video into |
| 3:17 PM | 22 | evidence, which of course could always happen, I think it's not |
| 3:17 PM | 23 | one of those cases that's testimony alone that we're trying to |
| 3:17 PM | 24 | mitigate prior to going to trial and avoiding a child |
| 3:17 PM | 25 | testifying.  We probably wouldn't even need his testimony, |

3:17PM  1    could use his birth certificate or a relative to prove who he

3:17PM  2    is and what his age was.

3:17PM  3            **THE COURT:**  Uh-huh.

3:18PM  4            **MS. FAVORIT:**  She's also under a state case right now

3:18PM  5    for capital sexual battery, and I know that's not totally

3:18PM  6    relevant right now, but it's an automatic life sentence.  If

3:18PM  7    she were to go to trial in the state or plead guilty to capital

3:18PM  8    sexual battery, it's automatic life.  I don't believe that's

3:18PM  9    what's going to happen.  I think that she will end up pleading

3:18PM 10    guilty based on -- and requesting concurrent time based on

3:18PM 11    today's.  So I think that there are a lot of factors in this

3:18PM 12    case that made sense for her to avoid a trial.

3:18PM 13            And on our part, we dropped several counts.  So

3:18PM 14    I understand why 480 months appears to be a life sentence, and

3:18PM 15    maybe it will be.  However, the other counts would have

3:18PM 16    increased her maximum, so she could have actually gotten life

3:18PM 17    or 30 years if she had pled to multiple production counts,

3:19PM 18    which we ended up dropping as part of the plea agreement.

3:19PM 19            **THE COURT:**  I mean, you know, by the time you're in

3:19PM 20    your late 70s, I'm not certain how much -- I mean, there are

3:19PM 21    people that live obviously into their 80s and 90s, but you

3:19PM 22    don't have the same lifestyle opportunities as even in your 60s

3:19PM 23    when you get to your late 70s, and that's basically what she's

3:19PM 24    looking at, minus, of course, any time -- gained time that --

3:19PM 25    she's sure as heck not going to get any Cares Act or

| | |
|---|---|
| 3:19 PM | 1 |
| 3:19 PM | 2 |
| 3:19 PM | 3 |
| 3:19 PM | 4 |
| 3:19 PM | 5 |
| 3:19 PM | 6 |
| 3:19 PM | 7 |
| 3:19 PM | 8 |
| 3:20 PM | 9 |
| 3:20 PM | 10 |
| 3:20 PM | 11 |
| 3:20 PM | 12 |
| 3:20 PM | 13 |
| 3:20 PM | 14 |
| 3:20 PM | 15 |
| 3:20 PM | 16 |
| 3:20 PM | 17 |
| 3:20 PM | 18 |
| 3:20 PM | 19 |
| 3:20 PM | 20 |
| 3:20 PM | 21 |
| 3:20 PM | 22 |
| 3:20 PM | 23 |
| 3:20 PM | 24 |
| 3:20 PM | 25 |

1 compassionate release or any of that type of adjustment.  I
2 don't think she would ever be eligible for any of those
3 reductions that drug defendants routinely get.
4            Don't you agree?
5            MS. FAVORIT:  I agree except for the compassionate
6 release.  If one day she got an illness, we may see her again,
7 only because I'm responding to so many of those.
8            THE COURT:  I don't know.  This kind of offense,
9 she'd have a hard time, in my opinion, from any judge.
10           All right.  So you're asking for 40 years, 480
11 months?
12           MS. FAVORIT:  Yes, Your Honor.  And maybe it seems
13 insignificant, but whatever Your Honor ends up doing prison
14 time-wise, we are asking for a lifetime supervision to follow.
15           THE COURT:  Yeah, I would most certainly impose that.
16 There are enough 70-year-olds who break the law where I would
17 most certainly make certain she's under the thumb of United
18 States probation service.
19           Okay.  Anything else?
20           MS. FAVORIT:  No, Your Honor.  Thank you.
21           THE COURT:  You're welcome.  All right.  I'm going to
22 turn to the defense.  Do you know of any reason why this Court
23 should not now proceed with imposition of sentence?
24           MS. MIECZKOWSKI:  No, Your Honor.
25           THE COURT:  Ms. Mieczkowski, this is your opportunity

| | | |
|---|---|---|
| 3:20PM | 1 | to make a statement, present any information in mitigation of |
| 3:21PM | 2 | the sentence, and Ms. Sparks, you have the right address the |
| 3:21PM | 3 | Court.  You don't have to, but at this juncture, I would like |
| 3:21PM | 4 | to make certain that you understand that you have that right. |
| 3:21PM | 5 | Do you understand that? |
| 3:21PM | 6 | THE DEFENDANT:  Yes, ma'am. |
| 3:21PM | 7 | THE COURT:  Okay.  Go ahead, Ms. Mieczkowski. |
| 3:21PM | 8 | MS. MIECZKOWSKI:  May approach the lectern as well? |
| 3:21PM | 9 | THE COURT:  Yes, that would be fine.  And I |
| 3:21PM | 10 | appreciate your memo.  I will grant your request to file that |
| 3:21PM | 11 | under seal, if I haven't done it already, so I'll do that now, |
| 3:21PM | 12 | where the memo and the information can be filed under seal.  I |
| 3:21PM | 13 | don't know if I already signed off on that. |
| 3:21PM | 14 | MS. MIECZKOWSKI:  Yes, Your Honor.  We ask the Court |
| 3:21PM | 15 | to -- |
| 3:21PM | 16 | THE COURT:  We filed that under seal.  Okay.  You |
| 3:21PM | 17 | have -- I think you have asked for 300 months; is that right? |
| 3:21PM | 18 | MS. MIECZKOWSKI:  That's correct, yes. |
| 3:21PM | 19 | THE COURT:  And you've cited a number of cases where |
| 3:21PM | 20 | the Eleventh Circuit, for instance, on one, the _Irey_ case, if I |
| 3:22PM | 21 | pronounced that correctly, _Irey_, and I don't remember if |
| 3:22PM | 22 | that -- I don't remember if that was the case out of the |
| 3:22PM | 23 | Orlando Division? |
| 3:22PM | 24 | MS. MIECZKOWSKI:  It was, Your Honor. |
| 3:22PM | 25 | THE COURT:  I remember that case.  I remember reading |

```
3:22PM   1   about it, and I don't have any problem saying this.  I just
3:22PM   2   thought he deserved a much harsher sentence for what he did.
3:22PM   3   And, you know, the Eleventh Circuit thought so too, sent it
3:22PM   4   back, and I forget what the judge -- I guess the judge at that
3:22PM   5   point gave him 30 years, right?
3:22PM   6            MS. MIECZKOWSKI:  That's correct.  That was the
3:22PM   7   sentence on remand, yes.
3:22PM   8            THE COURT:  Right, the 30 years.  So you cite that to
3:22PM   9   us.
3:22PM  10            MS. MIECZKOWSKI:  And I had one other case.
3:22PM  11            THE COURT:  Of course.
3:22PM  12            MS. MIECZKOWSKI:  And I'd be happy to talk to the
3:22PM  13   Court about why I included those if Your Honor wanted insight
3:23PM  14   on that.
3:23PM  15            THE COURT:  Please go ahead.
3:23PM  16            MS. MIECZKOWSKI:  As Court is aware, the guidelines
3:23PM  17   in most circumstances exist to help courts decide where within
3:23PM  18   this big wide open range created by Congress any individual
3:23PM  19   defendants should fall given their history and their
3:23PM  20   characteristics.  And as the Court can see in these production
3:23PM  21   cases, because of the way that the guidelines have been amended
3:23PM  22   over the years, that -- and this is where Your Honor can rely
3:23PM  23   on your own experience, I will say that in my experience, I
3:23PM  24   have not had a production case where the guidelines did not far
3:23PM  25   exceed the maximum.  And in effect in every production case
```

3:23 PM   1   that I've had, and I expect that the Court does see this

3:23 PM   2   routinely, that the guidelines lose that function in a way of

3:23 PM   3   helping Court find out where to go within the range because

3:23 PM   4   they far exceed it.

3:23 PM   5          And my experience has been that it is more

3:23 PM   6   helpful to look at other comparable cases to the greatest

3:24 PM   7   extent that we can make those comparisons to figure out where

3:24 PM   8   other courts landed or even where this Court landed as a

3:24 PM   9   guidance since, as I also discussed in my memorandum and as the

3:24 PM  10   Court touched on with the United States, there is a social

3:24 PM  11   interest in not sentencing every single one of these defendants

3:24 PM  12   to the maximum potential penalty such that everybody went to

3:24 PM  13   trial.

3:24 PM  14          So I picked those cases to provide some footing

3:24 PM  15   to see comparable cases and where those sentences landed.

3:24 PM  16          THE COURT:  I mean, I've read what you've given me

3:24 PM  17   here.  I appreciate it.  You know, on a lot of things -- I've

3:24 PM  18   been a judge I think it's 19 years now.  I sentence lower today

3:24 PM  19   than what I did 19 years ago, and I think a lot of other judges

3:24 PM  20   do too.  I think that we've gone away from a lot of draconian

3:25 PM  21   sentences.  I'm telling you that, for instance, on drug cases,

3:25 PM  22   I sentence lower than I ever thought I would, and I've been

3:25 PM  23   doing that.  But there's something about this kind of case.  It

3:25 PM  24   took a lot for me to depart from the guidelines on receipt of

3:25 PM  25   child pornography, and then they send it out again.  I

3:25PM    1    ultimately did, because I realized I absolutely was an outlier.

3:25PM    2    I was the only person sticking to the guidelines.  And so I

3:25PM    3    periodically depart from the guidelines on the right sentence,

3:25PM    4    on the right case.

3:25PM    5            Something like this, it's just -- it's so

3:25PM    6    repulsive.  It's just so repulsive, but that's not why I would

3:25PM    7    impose the sentence I would.  It really is to punish what she

3:25PM    8    did to her own child and to discourage anybody from doing that.

3:26PM    9            MS. MIECZKOWSKI:  I understand that, Your Honor, and

3:26PM   10    I would love to speak briefly sort of in response to some of

3:26PM   11    the conversation that the Court had with the Government, if I

3:26PM   12    may?

3:26PM   13            THE COURT:  Uh-huh, sure.

3:26PM   14            MS. MIECZKOWSKI:  So, of course, there is no question

3:26PM   15    that these cases are shocking.  The Government uses the word

3:26PM   16    "abhorrent" in their memorandum, and I think that probably does

3:26PM   17    appropriately capture it.  But I would suggest that a lot of

3:26PM   18    this conduct applies across these types of cases.  And so just

3:26PM   19    now, the United States, for example, suggested that the things

3:26PM   20    that are shocking about this case is that this -- that

3:26PM   21    Ms. Sparks committed these acts when no one else was watching.

3:26PM   22    That was one example, right?  Outside the view of anybody else.

3:26PM   23    And I would suggest that that happens in all of these cases,

3:26PM   24    because the Defendants know what they're doing is criminal and

3:26PM   25    unacceptable.  So that's an example of a fact that I think

| | |
|---|---|
| 3:27PM | 1 |

would put this case similarly situated to virtually every other case of this nature.

Similarly, the Government talked about how this was a child that lived with her, and she was in control of that.  That is again something that the Court sees.  Your Honor used examples of the boyfriend, and there is a care, custody, and control enhancement in the guidelines to acknowledge the frequency of that which was applied in this case, and also the Government mentioned these chats, about the way that in the chats they're talking about children in a grotesque manner. Again, I know the Court has handled many of these cases over the years, and of course you can rely on your own experience, but my experience has been that those chats do frequently show up in these types of cases, and that does not place this case outside of other cases of this nature.

So when we're talking about this concept of like there are lots of people with mental health issues, and there are people that have been sexually abused that do not end up committing this conduct, that's absolutely true, and I think everyone here would openly acknowledge that.  But in fashioning the appropriate sentence, I would suggest that it is not appropriate to compare Ms. Sparks to someone who doesn't commit a crime altogether, but to compare her to someone who does commit this crime, who commits a similar offense and is similarly situated.  And that's another reason why I included

3:28PM 1    those two examples.  I included the Irey case as a very extreme

3:28PM 2    example of one of these types of offenses which included

3:28PM 3    violence and other horrific things.  I'm not going to retell

3:28PM 4    all of it.  I know the Court is familiar with it as one far end

3:28PM 5    of the extreme which we can say, "Hey, these cases are really

3:28PM 6    bad, and they deserve to be punished," and that's legitimate,

3:28PM 7    but they all aren't exactly the same as one another.  And I

3:29PM 8    included the Jones case because I think factually that is

3:29PM 9    comparable for different reasons.

3:29PM 10        THE COURT:  Yeah, I think it's really bad when

3:29PM 11   somebody goes to another country -- like the Philippines, for

3:29PM 12   instance, is where I've had cases -- and those mothers let the

3:29PM 13   little girls become victims at the hands of American predators.

3:29PM 14   It's just something about a mother doing that to her own child.

3:29PM 15   It's just really hard for me to get away from that.  You know,

3:29PM 16   it really is hard.  I mean, it's disgusting enough when it's

3:29PM 17   stranger who meets a child, wherever they meet them, at a hotel

3:29PM 18   room, but a mother?

3:29PM 19        MS. MIECZKOWSKI:  Your Honor, I understand that.  I

3:29PM 20   think the average members of society have a really hard time

3:29PM 21   with that, but I would suggest that she does not deserve a

3:30PM 22   harsher sentence than a stepfather who lives with their child,

3:30PM 23   like in the case that I gave as an example, and is basically

3:30PM 24   the only father in their life and takes advantage of that

3:30PM 25   position for the abuse.

| | | |
|---|---|---|
| 3:30 PM | 1 | So the totality of my position there is I'm |
| 3:30 PM | 2 | asking the Court not to compare Ms. Sparks to someone with |
| 3:30 PM | 3 | mental health issues who never committed an offense, or someone |
| 3:30 PM | 4 | with a sexual abuse history who never committed an offense, but |
| 3:30 PM | 5 | to compare her case as to other similarly-situated cases, and |
| 3:30 PM | 6 | as deeply shocking and offensive as it may be, it is not |
| 3:30 PM | 7 | outside of the heartland of other similar-type cases, and there |
| 3:30 PM | 8 | are some aspects of it which are mitigating.  Like, for |
| 3:30 PM | 9 | example, this did not go on for months or years.  And there was |
| 3:30 PM | 10 | no -- the violence, there was no taking advantage of just |
| 3:30 PM | 11 | horrific poverty like the Court is talking about, leveraging |
| 3:31 PM | 12 | just awful conditions somewhere else to commit that type of |
| 3:31 PM | 13 | abuse.  We don't have those things here. |
| 3:31 PM | 14 | I would also say that I would ask the Court to |
| 3:31 PM | 15 | take into account that her mental health issues are |
| 3:31 PM | 16 | significant.  I'm not going to belabor that.  I know the Court |
| 3:31 PM | 17 | has read the memorandum as well as her history of abuse, and |
| 3:31 PM | 18 | ultimately -- and I know the Court touched on this with the |
| 3:31 PM | 19 | United States, but we have a social interest, a societal |
| 3:31 PM | 20 | interest in incentivizing people in these types of cases to |
| 3:31 PM | 21 | plead guilty, not just to avoid life, but to avoid the maximum |
| 3:31 PM | 22 | punishment, right?  If everyone was looking at the statutory |
| 3:31 PM | 23 | maximum -- |
| 3:31 PM | 24 | THE COURT:  Well, there you've hit, honestly, your |
| 3:31 PM | 25 | strongest point, your strongest argument.  What incentive is |

| | | |
|---|---|---|
| 3:31 PM | 1 | there, if you're 38 years old -- I think that's what she is, |
| 3:31 PM | 2 | 38 -- and you get a sentence of 40 years, and you get out at |
| 3:32 PM | 3 | 78 -- I know there's some kind of gain time, but 78, what's the |
| 3:32 PM | 4 | incentive? |
| 3:32 PM | 5 | MS. MIECZKOWSKI:  And I just have one final point to |
| 3:32 PM | 6 | make on that particular aspect of my argument, which is that |
| 3:32 PM | 7 | the United States just mentioned that for them they viewed this |
| 3:32 PM | 8 | as the evidence of guilt being so strong, but I would suggest |
| 3:32 PM | 9 | that doesn't really hit directly on the point that we're |
| 3:32 PM | 10 | talking about in that no matter the strength of the evidence, |
| 3:32 PM | 11 | as the Court said, we have all seen unexpected things happen in |
| 3:32 PM | 12 | a trial, and if -- if -- of all the cases where we should |
| 3:32 PM | 13 | incentivize people to not bring children into court, to not |
| 3:32 PM | 14 | re-expose victims to reliving the offense and the public |
| 3:32 PM | 15 | endeavor of testimony and all of that, I would suggest that |
| 3:32 PM | 16 | these are the types of cases, of all the types of cases that |
| 3:33 PM | 17 | this Court sees, where this incentive to not put victims |
| 3:33 PM | 18 | through this and to give people an actual benefit for pleading |
| 3:33 PM | 19 | guilty is the strongest category of case.  And so that's why I |
| 3:33 PM | 20 | end on that section. |
| 3:33 PM | 21 | So I don't have anything further to present. |
| 3:33 PM | 22 | Thank you. |
| 3:33 PM | 23 | THE COURT:  Thank you.  Anything you'd like to say, |
| 3:33 PM | 24 | Ms. Sparks, before I pronounce sentence? |
| 3:33 PM | 25 | MS. MIECZKOWSKI:  Your Honor, we discussed this ahead |

| | | |
|---|---|---|
| 3:33 PM | 1 | of time, and can she does not want to speak. |
| 3:33 PM | 2 | THE COURT:  Okay.  I just want to make certain she |
| 3:33 PM | 3 | says it.  She needs to tell me no. |
| 3:33 PM | 4 | THE DEFENDANT:  No. |
| 3:33 PM | 5 | THE COURT:  Okay.  All right.  Anything else before I |
| 3:33 PM | 6 | impose sentence? |
| 3:33 PM | 7 | MS. FAVORIT:  Not from the United States. |
| 3:33 PM | 8 | MS. MIECZKOWSKI:  Not from the defense. |
| 3:33 PM | 9 | THE COURT:  All right.  Thank you. |
| 3:33 PM | 10 | The Court has asked the Defendant why judgment |
| 3:33 PM | 11 | should not now be pronounced, and after hearing the Defendant's |
| 3:34 PM | 12 | response, the Court has found no cause to the contrary.  The |
| 3:34 PM | 13 | parties have made statements in their behalf or have waived the |
| 3:34 PM | 14 | opportunity to do so, and the Court has reviewed the |
| 3:34 PM | 15 | presentence report.  Pursuant to Title 18, United States Code, |
| 3:34 PM | 16 | Sections 3551 and 3553, it is the judgment of the Court that |
| 3:34 PM | 17 | the Defendant, Brooke Shawntaye Sparks, is hereby committed to |
| 3:34 PM | 18 | the custody of the Bureau of Prisons to be imprisoned for a |
| 3:34 PM | 19 | term of 480 months, 40 years.  This term consists of a |
| 3:34 PM | 20 | 360-month term as to Count 1 and a 120-month term as to |
| 3:34 PM | 21 | Count 4.  Count 4 is to be served consecutively to Count 1. |
| 3:34 PM | 22 | Upon release from imprisonment, you shall serve |
| 3:34 PM | 23 | a 15-year term of supervised release.  This term consists of a |
| 3:34 PM | 24 | 15-year term as to Counts 1 and 4, all such terms to run |
| 3:34 PM | 25 | concurrently.  While on supervised release, you shall comply |

3:35PM  1    with the mandatory and standard conditions adopted by the Court

3:35PM  2    in the Middle District of Florida.

3:35PM  3              In addition, you shall comply with the following

3:35PM  4    special conditions:  You shall participate in a mental health

3:35PM  5    program specializing in sexual offender treatment and submit to

3:35PM  6    polygraph testing for treatment and monitoring purposes.  You

3:35PM  7    shall follow the probation officer's instructions regarding the

3:35PM  8    implementation of this Court directive.  Further, you shall

3:35PM  9    contribute to the costs of such treatment and/or polygraphs not

3:35PM  10   to exceed an amount determined reasonable by the probation

3:35PM  11   officer based upon ability to pay or availability of

3:35PM  12   third-party payment, and in compliance with the probation

3:35PM  13   officer's sliding scale for treatment services.  You shall

3:35PM  14   register with the state sexual offender registration agency in

3:35PM  15   any state where you reside, visit, are employed, carry on a

3:35PM  16   vocation, or are a student as directed by the probation

3:35PM  17   officer.

3:36PM  18             The probation officer shall provide state

3:36PM  19   officials with all information required under Florida sexual

3:36PM  20   predator and sexual offender notification and registration

3:36PM  21   statutes.  That's Florida statute 943.0435 and/or the Sex

3:36PM  22   Offender Registration and Notification Act, Title I of the Adam

3:36PM  23   Walsh Child Protection and Safety Act of 2006, Public Law

3:36PM  24   109-248, and may direct the Defendant to report to these

3:36PM  25   agencies personally for required additional processing, such as

| | | |
|---|---|---|
| 3:36PM | 1 | photographing, fingerprinting, and DNA collection. |
| 3:36PM | 2 | You shall have no direct contact with minors |
| 3:36PM | 3 | under the age of 18 without the written approval of the |
| 3:36PM | 4 | probation officer and shall refrain from entering any area |
| 3:36PM | 5 | where children frequently congregate, including schools, day |
| 3:36PM | 6 | care centers, theme parks, playgrounds, et cetera. |
| 3:36PM | 7 | You are prohibited from possessing, subscribing |
| 3:37PM | 8 | to or viewing any images, videos, magazines, literature, or |
| 3:37PM | 9 | other materials depicting children in the nude and/or in |
| 3:37PM | 10 | sexually explicit positions.  Without prior written approval of |
| 3:37PM | 11 | the probation officer, you are prohibited from either |
| 3:37PM | 12 | possessing or using a computer, including a smartphone, a |
| 3:37PM | 13 | handheld computer device, a gaming console, or an electronic |
| 3:37PM | 14 | device capable of connecting to an online service or an |
| 3:37PM | 15 | internet service provider. |
| 3:37PM | 16 | This prohibition includes a computer at a public |
| 3:37PM | 17 | library, an internet cafe, your place of employment, or an |
| 3:37PM | 18 | educational facility.  Also, you are prohibited from possessing |
| 3:37PM | 19 | an electronic data storage medium, including a flash drive, a |
| 3:37PM | 20 | compact disc, and a floppy disk, or using any data encryption |
| 3:37PM | 21 | technique or program.  If approved to possess or use a device, |
| 3:37PM | 22 | you must permit routine inspection of the device, including the |
| 3:38PM | 23 | hard drive and any other electronic data storage medium to |
| 3:38PM | 24 | confirm adherence to this condition.  The United States |
| 3:38PM | 25 | Probation Office must conduct the inspection in a manner no |

| | |
|---|---|
| 3:38 PM | 1 |

more intrusive than necessary to assure compliance with this
condition.  This condition might affect a third party,
including your employer.  You must inform the third party of
this restriction, including the computer inspection provision.

You shall have no contact -- excuse me -- direct
or indirect, with the victims identified in Count 1, and that's
GS.  You shall submit to a search of your person, residence,
place of business, any storage units under your control,
computer, or vehicle conducted by the United States probation
officer at a reasonable time in a reasonable manner based upon
reasonable suspicion of contraband or evidence of a violation
or a condition of release.  You shall inform any other
residents that the premises may be subject to a search pursuant
to this condition.  Failure to submit to a search may be
grounds for revocation.

Having been convicted of a qualifying felony,
you must cooperate in the collection of DNA as directed by the
probation officer.  You must refrain from any unlawful use of a
controlled substance.  You must submit to one drug test within
15 days of placement on supervision and at least two periodic
drug tests thereafter as directed by the probation officer.
You must submit to random drug testing not to exceed 104 tests
per year.  The determination of restitution is deferred.
Pursuant to Title, 18 United States Code, Section 3664(d)(5), a
date for the final determination of victim losses shall be

| | | |
|---|---|---|
| 3:39 PM | 1 | under a separate order.  It will not exceed 90 days. |
| 3:39 PM | 2 | So, Ms. Mieczkowski and Ms. Favorit, I think I |
| 3:39 PM | 3 | said two weeks.  14 days from today, you should submit |
| 3:40 PM | 4 | memorandum, either after consulting or a joint memo, and let me |
| 3:40 PM | 5 | know if the Defendant wishes to be present for the hearing, if |
| 3:40 PM | 6 | she waives her right, or what amount you think is appropriate |
| 3:40 PM | 7 | if you've come to an agreement.  Based on the financial status |
| 3:40 PM | 8 | of the Defendant, the Court waives imposition of a fine. |
| 3:40 PM | 9 | Are there any forfeiture matters to consider? |
| 3:40 PM | 10 | MS. FAVORIT:  We did have forfeiture in the plea |
| 3:40 PM | 11 | agreement, Your Honor. |
| 3:40 PM | 12 | THE COURT:  That's made a final order of forfeiture |
| 3:40 PM | 13 | today. |
| 3:40 PM | 14 | It's further ordered that the Defendant shall |
| 3:40 PM | 15 | pay the United States special assessments totaling $200, which |
| 3:40 PM | 16 | shall be due immediately.  The Court finds that the Defendant |
| 3:40 PM | 17 | is indigent, and the special assessment pursuant to 18 United |
| 3:40 PM | 18 | States Code, Section 3014 is not imposed.  Do you agree with |
| 3:40 PM | 19 | that, Ms. Favorit? |
| 3:40 PM | 20 | MS. FAVORIT:  Yes, Your Honor. |
| 3:40 PM | 21 | THE COURT:  The Court finds the Defendant is |
| 3:40 PM | 22 | indigent, and the assessment pursuant to 18 USC Section 2259(a) |
| 3:40 PM | 23 | is not imposed.  Do you agree with that? |
| 3:41 PM | 24 | MS. FAVORIT:  Yes, Your Honor. |
| 3:41 PM | 25 | THE COURT:  After considering the advisory sentencing |

3:41PM 1    guidelines and all the factors identified in Title 18, United

3:41PM 2    States Code, Sections 3553(a)(1) through (7), the Court finds

3:41PM 3    that the sentence imposed is sufficient but not greater than

3:41PM 4    necessary to comply with the statutory purposes of sentencing.

3:41PM 5    The Court has accepted the plea agreement because it's

3:41PM 6    satisfied that the agreement adequately reflects the

3:41PM 7    seriousness, the actual offense behavior, accepting the plea

3:41PM 8    agreement will not undermine the statutory purposes of

3:41PM 9    sentencing.

3:41PM 10           Under the plea agreement, the Defendant has

3:41PM 11   entered a guilty plea to Counts 1 and 4 in the return for the

3:41PM 12   dismissal of Counts 2 and 3.  Should I, Ms. Favorit, then

3:41PM 13   dismiss Counts 2 and 3 of the indictment?

3:41PM 14           **MS. FAVORIT:**  Yes, Your Honor.

3:41PM 15           **THE COURT:**  All right.  We'll do that at this time.

3:41PM 16           So, Ms. Sparks, it's not very often that I give

3:41PM 17   what is in essence a life sentence.  I can assure you that it's

3:41PM 18   something that I do with a great deal of thought, and I don't

3:42PM 19   make up my mind until I walk into the courtroom, until I hear

3:42PM 20   from you, and that's when I firmly decide what is the sentence

3:42PM 21   that is fair and appropriate.

3:42PM 22           There are certain cases I just feel stronger

3:42PM 23   about, and this is one of them.  I really am troubled by the

3:42PM 24   fact that it's your own child.  To me it's worse than doing it

3:42PM 25   to somebody else's child.  It's doing it to your own child.

| | | |
|---|---|---|
| 3:42 PM | 1 | It's really troubling.  But as I said, that's not why I imposed |
| 3:42 PM | 2 | the sentence I did.  I impose it to punish you, to discourage |
| 3:42 PM | 3 | anybody else from doing that to anyone else, and that's really |
| 3:42 PM | 4 | why I've imposed the sentence I did.  To the extent that |
| 3:42 PM | 5 | sentences deter people, I hope that this does.  To me it's just |
| 3:43 PM | 6 | the importance of protecting our children.  While I have to |
| 3:43 PM | 7 | read in a report that your son is moving forward, I'm glad to |
| 3:43 PM | 8 | hear that he's at least doing okay in school.  Hopefully with |
| 3:43 PM | 9 | counseling, he can move forward and have a, you know, happy and |
| 3:43 PM | 10 | productive life. |
| 3:43 PM | 11 | That's why I sentenced you as I did, to punish |
| 3:43 PM | 12 | and to deter.  It's that simple. |
| 3:43 PM | 13 | The Court, having pronounced sentence, does |
| 3:43 PM | 14 | counsel for the Defendant or Government have any objections to |
| 3:43 PM | 15 | the sentence or to the manner in which the Court pronounced |
| 3:43 PM | 16 | sentence, other than those previously stated for the record? |
| 3:43 PM | 17 | Ms. Favorit? |
| 3:43 PM | 18 | **MS. FAVORIT:**  No, Your Honor. |
| 3:43 PM | 19 | **THE COURT:**  Thank you.  Ms. Mieczkowski? |
| 3:43 PM | 20 | **MS. MIECZKOWSKI:**  I don't have any additional |
| 3:43 PM | 21 | objections, Your Honor. |
| 3:43 PM | 22 | **THE COURT:**  Thank you.  The Defendant is remanded to |
| 3:43 PM | 23 | the custody of the United States Marshal to await designation |
| 3:43 PM | 24 | by the Bureau of Prisons.  I'll get to recommendations in a |
| 3:43 PM | 25 | moment. |

|   |   |
|---|---|
| 3:43 PM | 1 |
| 3:44 PM | 2 |
| 3:44 PM | 3 |
| 3:44 PM | 4 |
| 3:44 PM | 5 |
| 3:44 PM | 6 |
| 3:44 PM | 7 |
| 3:44 PM | 8 |
| 3:44 PM | 9 |
| 3:44 PM | 10 |
| 3:44 PM | 11 |
| 3:44 PM | 12 |
| 3:44 PM | 13 |
| 3:44 PM | 14 |
| 3:44 PM | 15 |
| 3:44 PM | 16 |
| 3:44 PM | 17 |
| 3:44 PM | 18 |
| 3:44 PM | 19 |
| 3:44 PM | 20 |
| 3:44 PM | 21 |
| 3:45 PM | 22 |
| 3:45 PM | 23 |
| 3:45 PM | 24 |
| 3:45 PM | 25 |

1        To the extent permitted by your plea agreement,

2  you have a right to appeal from the judgment and sentence

3  within 14 days from the entry of the judgment.  Failure to

4  appeal within the 14-day period shall be a waiver of your right

5  to appeal.  The Government may file an appeal from this

6  sentence.  You are also advised that you're entitled to

7  assistance of counsel in taking an appeal, and if you are

8  unable to afford a lawyer, one will be provided for you.  If

9  you are unable to afford the filing fee, the clerk of the Court

10  will be directed to accept the notice of appeal without such a

11  fee.

12        Where would your client like to be housed?

13        MS. MIECZKOWSKI:  Your Honor, we would request that

14  she be evaluated for medical placement in the Bureau of Prisons

15  but that if they determine that to be inappropriate, then in

16  Tallahassee.

17        THE COURT:  Okay.  So I will recommend that she be

18  evaluated for medical placement.  If medical placement is not

19  available, then she be housed at FCI Tallahassee.  That's fine.

20        MS. MIECZKOWSKI:  We would additionally request that

21  she be evaluated for eligibility for the RDAP program, and that

22  if the Bureau of Prisons is sending her somewhere that is not

23  medical placement or Tallahassee, that they prioritize UNICOR

24  or other equivalent.

25        THE COURT:  Okay.  That would be fine.  I will do

3:45 PM  1   that.  I will make that recommendation for RDAP and for the

3:45 PM  2   other programs that you've described.

3:45 PM  3          MS. MIECZKOWSKI:  Then ultimately with regard to

3:45 PM  4   otherwise specialized vocational training, it is her intention

3:45 PM  5   to see what is available through her counselor when she's

3:45 PM  6   placed, because there are many fewer women's facilities in the

3:45 PM  7   Bureau of Prisons as there are men's facilities, and the

3:45 PM  8   programming varies, and so we didn't want to provide the Court

3:45 PM  9   with a long list, not knowing what would be available.  So she

3:45 PM  10  will address that when she is placed.

3:45 PM  11         THE COURT:  Okay.  So I will recommend that she be

3:45 PM  12  evaluated by the Federal Bureau of Prisons for whatever

3:45 PM  13  training programs they deem appropriate.

3:45 PM  14             All right.  Is there anything else before we

3:45 PM  15  adjourn, Ms. Favorit?

3:45 PM  16         MS. FAVORIT:  No, Your Honor.  Thank you.

3:45 PM  17         THE COURT:  Ms. Mieczkowski?

3:46 PM  18         MS. MIECZKOWSKI:  No, Your Honor.  Thank you.

3:46 PM  19         THE COURT:  Ms. Campbell?

3:46 PM  20         THE PROBATION OFFICER:  No, Your Honor.  Thank you.

3:46 PM  21         THE COURT:  We're in recess.  I'm just going to stay

3:46 PM  22  here for a moment.

3:46 PM  23             (End of proceedings.)

         24

         25

```
3:46PM    1              * * * * * * * * * * * * * * * * * * * * *

3:46PM    2                    UNITED STATES DISTRICT COURT

3:46PM    3                    MIDDLE DISTRICT OF FLORIDA

3:46PM    4
3:46PM
3:46PM    5              REPORTER TRANSCRIPT CERTIFICATE

3:46PM    6         I, Tana J. Hess, Official Court Reporter for the United
3:46PM       States District Court, Middle District of Florida, certify,
3:46PM    7  pursuant to Section 753, Title 28, United States Code, that the
3:46PM       foregoing is a true and correct transcription of the
3:46PM    8  stenographic notes taken by the undersigned in the
3:46PM       above-entitled matter (Pages 1 through 31 inclusive) and that
3:46PM    9  the transcript page format is in conformance with the
3:46PM       regulations of the Judicial Conference of the United States of
3:46PM   10  America.
3:46PM
3:46PM   11
3:46PM
3:46PM   12
3:46PM
3:46PM   13  _____

3:46PM   14       Tana J. Hess, CRR, RMR, FCRR
3:46PM           Official Court Reporter
3:46PM   15       United States District Court
3:46PM           Middle District of Florida
3:46PM   16       Tampa Division
3:46PM           Date:  July 13, 2023
3:46PM   17

         18

         19

         20

         21

         22

         23

         24

         25
```

Tana J. Hess, CRR, RMR, FCRR
U.S. District Court Reporter
Middle District of Florida